RHODE ISLAND EPISCOPAL CONVENTION *et al. vs.* CITY

COUNCIL OF THE CITY OF PROVIDENCE *et al.*

APRIL 1, 1932.

PRESENT: Stearns, C. J., Rathbun, Murdock, and Hahn, JJ.

MURDOCK, J. This is a proceeding by writ of *certiorari* directed to the mayor and city council of the city of Providence to review their action in amending the zoning ordinance of said city.

Chapter 57, General Laws 1923, as amended by Chapter 430, Public Laws 1923, authorizes the city council of any

city and the representative council of the city of Newport to enact what are commonly referred to as zoning ordinances. Section 1 of said chapter provides as follows: "For the purpose of promoting health, safety, morals or general welfare, the city council of any city and the representative council of the city of Newport shall have power in accordance with the provisions of this chapter within the limits of such city by ordinance to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . ." Section 2 makes the enactment of such ordinances conditional upon preliminary investigation and a public hearing and then provides as follows: "The city council or the representative council of such city, as the case may be, shall have power, after a public hearing as herein provided, from time to time to amend or repeal any such ordinance and thereby change said regulations or districts: Provided, that if there shall be filed in the office of the city clerk of such city on or before the day of such hearing or within three days thereafter a written protest against such proposed amendment or repeal signed and acknowledged by the owners of twenty per centum or more of the street frontage of the property proposed to be affected, or by the owners of twenty per centum or more of the street frontage directly opposite the property proposed to be affected, or by the owners of the property abutting on twenty per centum or more of the boundary line between the property proposed to be affected and the property immediately in the rear thereof when there is no street between said properties, no such amendment or repeal shall be passed except by a three-fifths vote of such city council or representative council and the approval of the mayor of such city, or if disapproved by such mayor, by a like vote

as may be required by law to enact an ordinance in the case of disapproval by the mayor of such city."

Pursuant to the authority granted by said chapter 57 the city council of the city of Providence enacted the zoning ordinance now in force.

In May, 1931, Bridget McLaughlin petitioned the city council to amend the zoning ordinance so as to change lot #177, Assessors' Plat #82, from an apartment district to a business district. A public hearing was held by the ordinance committee of the city council at which objections were presented.

The petitioners, who are admittedly the owners of twenty per cent or more of the street frontage directly opposite the property proposed to be affected, within three days after said hearing, filed a written protest in accordance with the statute. The matter came before the common council with a recommendation from the ordinance committee that a proposed ordinance carrying into effect the amendment sought by said Bridget McLaughlin be adopted.

The question on the passage of the proposed ordinance was voted upon; twenty-one voted in the affirmative and sixteen in the negative, with two absent,—this being less than a three-fifths vote in the affirmative, the proposed ordinance failed of passage. The president of the common council then ruled that action on the ordinance by the board of aldermen must be awaited before the result could be determined. Later, notice having been received that the vote in the board of aldermen was thirteen in the affirmative and none in the negative, the president of the common council announced that the ordinance passed by a vote of thirty-four to sixteen.

In support of this action the respondents place their principal reliance upon a provision of the city charter which is as follows: "Section II, Clause 2. The mayor, aldermen and common council in their joint capacity, shall be styled the city council" and from this it is contended

that an act conferring legislative powers on the city council means that the same may be exercised by the mayor, the aldermen and the common council in their joint capacity. This clause must be read in connection with other clauses in the city charter and especially Clause 11 of Section IX, which is as follows: "All the powers vested in the said city council by this act shall be exercised by concurrent vote, each board to have a negative upon the other; but all elections of officers, unless otherwise provided by law, shall be had in convention of the two boards, and whenever required by any member of the convention shall be by ballot."

The clause upon which the respondents rely merely gives a name to the city government as a whole but does not modify the function of its constituent parts as defined in subsequent clauses.

The city government is made *bicameral* by its charter and we find no provision therein for both branches functioning as a *unicameral* body, except for the purpose of electing certain officers.

The action taken was, in effect, in a *unicameral* capacity, although the board of aldermen and the common council did not meet in common assembly.

It was clearly the intention of the legislature to make repeal or amendment of the zoning ordinance more difficult of accomplishment than in the ordinary case where only a majority vote is necessary.

This intention would be defeated if the respondents' contention were accepted for the reason that the negative vote of one branch of the city council might be nullified by the passage of an ordinance amending the zoning ordinance by a vote of thirty-two members of the common council. If such a vote were recorded in favor of amendment or repeal, the reference to the board of aldermen would then be a mere formality.

The respondents further urge in support of their contention that the provision which requires a three-fifths vote

to effect repeal or amendment of the zoning ordinance is the same vote required to override a veto by the mayor and it therefore could not have been the intention of the legislature to require the same vote both before and after a veto.

The answer to this contention is that the vote required to override a veto of the mayor is three-fifths of all of the members elected to the representative branches of the city government, while the three-fifths vote required to repeal or amend a zoning ordinance is three-fifths of those present there being a *quorum*. McQuillin on Municipal Corp., 2nd Ed., Vol. 2, p. 436.

For the foregoing reasons Chapter 806, Serial number 172, entitled "An Ordinance in amendment of Chapter 370 of the ordinances approved June 6, entitled 'An Ordinance Zoning the City of Providence and Establishing Height, Area and Use Districts'," was not legally enacted and is void. The following part of the record of the common council, of its meeting of May 4, 1931,—"President Lovett thereupon declares the ordinance passed by a vote of thirty-four to sixteen, more than three-fifths of the city council having voted in the affirmative"—is quashed.

*Stockwell & Chace, Elmer S. Chace,* for petitioners.

*John C. Mahoney, John T. Walsh, Francis D. McManus, Francis J. McCabe, Edward J. McQuade,* for respondents.